PETER F. WINN VS. JESSE HAM, AND MORGAN MARA.

The equitable powers of the Superior Courts of Georgia in supressing frauds, will be exercised
  in aid of a mortgagor, seeking to be relieved from a usurious contract, notwithstanding that
  the judiciary act points out a method by which he may, at common law, dispute the sum due.

On the application for an injunction, a Chancellor may go into the consideration of the merits'
  as disclosed in the bill, and which are instrinsic and dependent upon its express allegations
  and charges.

Though a bond and mortgage have been assigned, if the bill alleges that such assignment was
  colorable, and that the assignee had notice of the usury pervading the original contract, in the
  absence of a specific reputation of such allegations, the Court will grant an injunction.

### By CHARLTON, Judge.

THIS bill in its application for relief, prays for an injunction,
upon the following allegations.

That sometime, and perhaps, at the commencement of the
the year 1818, the complainant's affairs were so embarrassed,
that without a sacrifice of property he could make no payments :
that under the pressure of such necessitous circumstances, the
complainant " *thinks*," on the suggestion of *Mara*, was induced
to enter into an agreement with him for a loan of money—or as
is charged in the bill, " for the advance of such sum of money as
would enable your orator to relieve himself from his embarrassed
situation." That according to the terms of such agreement, and
in " consequence of it" the complainant on or about the 2nd of
March, 1818, gave, or executed a bond to *Mara* in the penal sum
of $3750, conditioned for the payment of $1875, payable in the
ensuing February, with legal interest from its date : That a
mortgage of personal property was contemporaneously executed,
the better to secure the payment of the money in the bond. That
afterwards, but the precise time not recollected, *Mara* obtained
from complainant the assignment or transfer of an instrument in
writing, purporting to be a contract between the complainant,

and one *Virgil H. Vivion*, for the hire of certain slaves of the complainant to *Vivion*, by which the latter was bound to pay to complainant $1200, for the services of said slaves at the expiration of one year : That the sum advanced on the security of the bond and mortgage, and that secured by *Vivion's* contract and assigned to *Mara*, by no means amounted together with lawful interest thereon to the sum of three thousand and seventy-five dollars, the aggregate amount of the sums due by the said bond and contract: that on the contrary, the securities united, not only covered the demand, for which the complainant was liable, but gave to " *Mara* exorbitant usurious interest," upon the amount actually advanced to complainant : that on the 16th of November, 1819, the bond and mortgage thus obtained from the complainant was assigned, or pretended to be assigned by *Mara* to *Jesse Ham :* that at the epoch of this assignment, the complainant believes *Ham* had a knowledge or notice of the usury connected with the circumstances of the transaction of the loan or advance of money for which the bond was given, and was equally cognizant of the fact, that the *Vivion* contract was transferred for the express purpose of securing usurious interest on the money actually advanced by *Mara :* that the complainant neither knows nor admits, that *Ham* gave any consideration or equivalent for the property he acquired in the bond and mortgage by the assignment: that in the transfer of the agreement between the complainant and *Vivion* to *Mara, Ham* acted as the friend and agent of complainant, and that complainant believes received from *Mara* a written acknowledgment to pay over to complainant any surplus of said contract, after discharging the usurious interest : that complainant believes *Ham* is now in possession of such receipt or stipulation ; and complainant thinks if such receipt were produced, it would appear that the complainant had engaged to pay 25, or 33 per centum on the money borrowed from *Mara :* that on the 25th of January, 1820, the complainant paid on the bond $1350 : that

on the 23d of March, of the same year, *Ham* proceeded to fore-
close the mortgage—the negroes levied upon, are advertised for
sale by the Sheriff: and that the complainant is ready and willing
to pay *Mara* or *Ham* the sum borrowed with legal interest.   The
bill prays specific and general relief, and for the writ of injunction
to stay proceedings on the execution issued by virtue of the fore-
closure of the mortgage, until the further order of this Court.   A
rule was granted by my predecessor to shew cause why an injunc-
tion should not be granted.   Much learning and great ability have
been displayed in support and against the rule, and upon the fore-
going synopsis of the allegations of the bill, it is now my duty to
discharge the rule or make it absolute.   When on a former occa-
sion this bill was submitted to my examination, I entertained
scarcely a doubt of the course I should take, or that which would
be prescribed to the mind of any Chancellor.   The discussion be-
fore me by the counsel of the defendants, and the suggestion of
extrinsic matter, if I may so express, produced an embarrassment
which required this short delay for reflection, and to afford to the
argument the deliberate attention to which it became entitled.

Mr. *Wayne* contended, that every relief the complainant now
seeks to obtain by a chancery investigation, he could have ob-
tained at common law, under that equitable remedy and form of
proceeding, designated in our Judicial Act, in relation to the fore-
closure of this species of mortgage—and that if he neglected to
avail himself of that proceeding, he could not now convert his
laches into an excuse for an application to this Forum.   This
is a difficulty which exhibits itself *in limine,* and stands with a
formidable aspect, in the very threshhold of the case.   But my
mind has conquered it, and in sustaining the jurisdiction, I am about
to exercise, I can perceive no hostility between the statutory
remedy and those general powers which a Court of Chancery as-
sumes, in suppressing frauds beyond the control of a common law
proceeding.   It is true you must pursue the remedy pointed out

by statute in foreclosing a mortgage, and you can pursue no other. But does that form of remedy under our statute offer to the mortgagor every equitable relief to which he may be entitled? It certainly does not, nor could the Legislature have intended the forms of the statutory foreclosure, as adequate to the fulfillment of all the justice a mortgagor might righteously claim. The statutory remedy can only afford relief on a dispute as to the sum due, by the exhibition of such proofs and evidence, as are admissible before a common law tribunal on a trial by Jury. The affidavit and bond of the mortgagor are mere bases for the order of postponement of sale, without giving to such affidavit the attributes of an answer in chancery. It only discloses facts, the mortgagor must subsequently establish, through those *media* recognized by a common law investigation. But if payments have been made, resting upon the exclusive knowledge of the mortgagee—if by withholding accounts, he has fraudulently violated any confidence reposed in his integrity by the mortgagor—if there has been any breach of trust confided to the honor and conscience of the mortgagee—if by associating with the sums actually lent, to the mortgagor, an iniquitous and ruinous interest, manifestly the base triumph of avarice over the miseries and necessities of the borrower—a transaction assuming any of these aspects, leaves the party remediless at common law, and therefore our Judicial Act, independent of the general powers incidental to, and inseparably amalgamated with the functions of a Chancellor, expressly delegates to the Superior Court opened in its Equity side, the "powers of a Court of Equity in *all* cases where a common law remedy is not adequate."

It must be obvious from the allegations of the bill, now under discussion, that the common law remedy of our Judicial Act, cannot reach and probe the distresses and exigencies of the complainant's case.

Part i.—K.

With these impressions, which I hope the learned gentlemen will believe have been very sincerely imbibed, I am of the opinion, the complainant has resorted to the proper jurisdiction.

In support of the rule, two grounds have been assumed :

*1st.* That the contract is usurious, and

*2d.*   That the bond and mortgage have been actually paid.

It is not necessary for me, on the application for the writ of injunction, to notice any other objection than the alleged usury of the transaction.

Mr. *Law*, laid the principle down, as the foundation of his argument, that it is competent for a Chancellor to go into the merits of a bill on the application for an injunction. (*Rose* vs. *Hamilton.* 1 *Dess. Eq. Rep.* 137.)

If by merits are here understood, a full and connected consideration of the facts and circumstances disclosed in the bill, uncontradicted by an answer, I acquiesce in the decision ; but it cannot be contended that we may travel *dehors* the bill and exhibits, for merits ; for these merits must be *intrinsic* and dependent upon the express allegations and charges of the bill. Do the allegations of this bill charge the usury and fraud, which would justify the interposition of this Court's enjoining authority ? I never entertained a doubt but that they were sufficient; all circumstances united, point to an intimate connexion between the bond and mortgage, and what has been denominated the *Vivion* contract, and the bill alleges the illicit intercourse ;—it charges, that the union and association of those different securities, gave to *Mara* an exorbitant and usurious interest. It charges, according to the belief of complainant, that the assignment to *Ham* of the bond and mortgage, was colorable—and under the influence of fraudulent combination. It charges too, that *Ham*, under the mask of friendly agency, directed the transfer to *Mara* of the *Vivion* con-

tract, and obtained, as the complainant believes, a written acknowledgment from *Mara* of the purposes for which the transfer was made, and which would also disclose the usurious interest pervading the whole connected transaction. For aught that appears upon the face of the bill, no dealing, or borrowing took place between the complainant and *Mara*, inducing the necessity of an additional agreement and settlement, by the transfer of *Vivion's* contract. In the absence then of a specific refutation of the usury, thus charged to have been accumulated, by this transfer, under the auspices of pretended friendship, I am compelled to consider this transfer as an appendix to, or rather, to use the language of one of the counsel, a continuity of the security by bond and mortgage.

This is my answer to the law and the argument of the counsel, for the defendants, founded on that distinctiveness of contract, for the payment of usurious interest, which cannot be immediately connected with the impure source of the original security. Such distinct contract in the hands of an innocent holder, without notice or suspicion of its wicked relation, (the security for the sum borrowed)—might, upon the footing of authority, find protection under the *aegis* of a Chancellor.

But, *Ham* is charged with notice of the fraud—with a knowledge of all the circumstances creating the usury, and with that knowledge of circumstances, influenced by suspicion, which would put a man on his guard, not actuated by *mala fides*. Mr. *Ham*, may repel those charges, insinuations, and beliefs of notice and combination : but as they present themselves upon the bill they are too prominent for a Chancellor to disregard. They oblige me to connect this transfer with the original security, by bond and mortgage, and until better informed, to consider the whole as a transaction bearing the figure and complexion of usury, and therefore to be restrained in its progress, as prayed for in the bill. Mr. *Habersham* brought to my notice the case of *Hansen* vs.

*Gardiner*, (7 *Ves.* 307,) referred to by *Maddock*, to shew " that of late years injunctions have been much more liberally allowed, than formerly." In reference to any case however ancient or modern, there is matter enough in this bill to allow a writ, which it is conceded is discretionary, and granted upon the circumstances of the case. (*Potter* vs. *Chapman*, *Amb.* 99.) It is sufficient for me to know that enough has been suggested which affects the equitable rights of the complainant in the proceedings of the Court. (1 *Maddock.* 105.) But I shall endeavour to prevent its being made a handle to delay the obtaining justice at law.

*It is ordered*, that a writ of injunction do issue, commanding the Sheriff of Liberty county, to stay further proceedings on the execution issued on the foreclosure of the mortgage assigned to the defendant *Jesse Ham*, until the coming in of the answers to the bill of complainant, by *Morgan Mara*, and *Jesse Ham*, when a motion may be made to dissolve the injunction upon ten days notice given to complainant, or his counsel : and that on the hearing of said motion, the defendants to this bill may also require of complainant, to exhibit his affidavit (to be filed in the Court below *nunc pro tunc*) in the form required by the Judicial Act, on the order for a postponement of a sale of personal property levied upon on the foreclosure of a mortgage, and to give the bond and security required by said Judicial Act, on which this Court can direct an issue to ascertain the damages incurred by the conduct and delay of the complainant; and it is further ordered, that previous to the issuing of the writ of injunction, within fifteen days from this date, the complainant do give good and sufficient security for the full amount of the execution, to be certified by the Clerk to the Sheriff, on deposit with said Clerk, the amount acknowledged to be due by complainant on said mortgage, giving good and sufficient security for the balance which may appear on the execution.